IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

JERMAINE NEAL                                                    PETITIONER

V.                                          CIVIL ACTION NO.2:10CV225-MPM-DAS

DANNY SCOTT, et al.                                            RESPONDENTS

## REPORT AND RECOMMENDATION

Jermaine Neal was convicted of murder in the Circuit Court of Tallahatchie County,

Mississippi and sentenced to life in prison.  The murder victim was Neal's live-in girlfriend,

Lakeshia Cleveland.  His conviction and sentence were affirmed by the Mississippi Supreme

Court.  That court rejected his request for post-conviction relief.  His habeas corpus petition in

this court sets out thirty-eight claims, including twenty-one claims of ineffective assistance of

counsel.  Having reviewed the petition, response, and record, the undersigned recommends that

the petition be denied.

## LIMITATIONS ON REVIEW

Consideration of a federal petition for habeas corpus is a two-tiered procedure.  Before

considering the merits of any claim, the court must first determine if all procedural steps

necessary to preserve each issue raised for federal review have been taken.  The petition must be

timely filed.[1]  Second, each claim in the petition must have been exhausted.  28 U.S.C

---

[1] There is no challenge to the timeliness of this petition.

§ 2254(b)(1).[2]  The claim must have been presented to the highest court in the state, here the Mississippi Supreme Court, either on direct appeal or by post-conviction proceedings.  If the claim is exhausted, the court generally proceeds to the merits.  If the claim is not exhausted and state post-conviction relief is no longer available, the claim will usually be finally dismissed.[3]

Petitioners must also meet state procedural requirements.  If the state court, pursuant to its regularly enforced rules and procedures, refuses to consider an issue on the merits because of a procedural violation, the federal courts will almost never consider the procedurally defaulted claim.  To avoid the bar of a procedural default, the petitioner must show "cause and prejudice" or a "fundamental miscarriage of justice."[4]

If and only if an issue has been exhausted and all state procedures followed, will the federal courts reach the second tier of the process addressing the issues on the merits.  Merits-

---

[2]  "An application of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies in the courts of the State."  28 U.S.C. § 2254((b)(1)(A).  "A fundamental prerequisite to federal habeas relief under 28 U.S.C. § 2254 is the exhaustion of all claims in state court under § 2254(b)(1) prior to requesting federal collateral relief."  *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir.), (citing *Rose v. Lundy*, 455 U.S. 509 (1982)).  The doctrine serves the salutary purpose of "giving the state courts the first opportunity to review the federal constitutional issues and to correct any errors made by the trial courts," and thus "serves to minimize friction between our federal and state systems of justice." *Satterwhite v. Lynaugh*, 886 F.2d 90, 92 (5th Cir. 1989) (quoting *Rose*, 455 U.S. at 518) (citations omitted)).

[3]  *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995).

[4]  "Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, this court may not review the prisoner's habeas petition unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Moawad v Anderson*, 143 F.3d 942, 947(5th Cir. 1998) citing *Stokes v. Anderson,* 123 F.3d 858, 859 (5th Cir.1997).   A "fundamental miscarriage of justice" is shown only where the petitioner can establish his factual innocence of the crime of conviction, with new reliable evidence not presented at trial.  *Fairman v. Anderson,* 188 F.3d. 635, 644(5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106,108 (5th Cir. 1995)).

based consideration is, however, limited to addressing only those issues affecting substantial federal constitutional rights. The federal courts do not function as appellate courts over the states and hold no supervisory authority over those courts. The federal courts may not correct errors of state law unless they also violate the constitutional rights of an accused. [5]

Even in matters affecting fundamental constitutional rights, the federal courts have a very limited scope of review. Title 28 U.S.C. § 2254(d) provides:

> (D) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The federal courts may not disturb the legal holdings of the state courts even if convinced they are erroneous, unless the decision is contrary to established federal law or the application of federal law is objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362 (2000). A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that by arrived at by [the Supreme Court] on the question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 413. The case represents an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* This statute also

---

[5] *Gilmore v. Taylor*, 508 U.S. 333, 348-49 (1993) (O'Connor, J. concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").

presumes each factual finding by the state courts is correct. These findings can be disturbed only if the petitioner rebuts the presumption with clear and convincing evidence.[6]

This petitioner's claims have been reviewed in light of these limitations.

## SUMMARY OF THE RECORD

Jermaine Neal lived with the murder victim, Lakeshia Cleveland. She had several children, including two who lived with her and Neal – a nine-year old son, who was not related to Neal, and a baby who was supposedly Neal's son. On August 22, 2006, after returning from work, Neal reported finding Cleveland's decapitated body in the bathtub of their Scobey, Mississippi home.

Neal has told three different stories about Cleveland's death. The earliest story was that he had no involvement in the murder and had no idea who might want to harm Cleveland. According to notes from an investigator, Neal later said he cut the victim's throat and that she kicked and jerked briefly. He claimed that with the first cut, blood spurted from the victim's neck. Neal supplemented the notes, writing that he had "shot her twice in the head before cutting her throat." He signed his name to this added note. Exhibit 21, S.C.R. vol. 2, p. 139, vol.4, p 171. In his videotaped statement, he said after a morning trip to Batesville, he and Lakeshia returned home and took a nap. Exhibit 20, S.C.R. vol. 2, p. 241-254, vol.4, p. 131. While she slept, he shot her twice in the head. He claimed he was pointing the gun at her, but he did not have the heart to go through with shooting her. The gun just discharged. He then shot her a second time in the head. S.C.R. vol. 2, p. 243. He then decapitated her with a knife from the kitchen. He dragged her body from the bed to the bathtub and poured bleach on her to

---

[6]   28 U.S.C. § 2254(e)(1).

remove his fingerprints from the body. He put her head and the knife into a bag. S.C.R. vol. 2, p. 247. He then wrote on the bathroom wall, "Bitch take care of my son," and the word "lame." He told police he took the victim's cell phone to work with him and sent text messages to and from the phone in an attempt to hide his guilt. S.C.R. vol. 2, p. 252-253. He said he and the victim were not arguing on the day of her death, but that he suspected she had been unfaithful and doubted his paternity of the younger child. S.C.R. vol. 2, p. 249-252.

Neal confessed to throwing his victim's head into Grenada Lake. S.C.R. vol. 2, p. 247-248. His promises to help locate Cleveland's head and the murder weapons went unfulfilled. He identified two different locations at the lake as the sites where he had disposed of the Lakeshia's head, but neither it, nor the gun or knife were ever recovered. *Neal v. State*, 15 So.3d 388, 398 (Miss. 2009).

His last version of events, memorialized in his attorney's opening statement, attributed Lakeshia's murder to three unidentified intruders. The intruders entered the house through the front door, and separated the couple, taking Cleveland into the bedroom, shooting her and then decapitating her. The intruders took the head, but left the body. They also left Neal unharmed, allegedly finding it sufficient to threaten the safety of another of his children. He now claims that he was silent about this version because he did not trust local law enforcement and was unable to contact the child's mother to warn her to leave her home.

NEAL'S CLAIMS ITEMIZED

Over the course of twelve pages in his petition, Neal sets forth thirty-eight claims not counting sub-parts.  As will be set forth below, Neal failed to exhaust some of these claims and the Mississippi Supreme Court found others were procedurally barred.  To make the petition more unwieldy, these bars apply in some cases to sub-parts of the listed grounds.  The respondents have restated Neal's claims, breaking out the various sub-parts and individually numbering or lettering them as appropriate. The court, with limited exceptions, adopts this restatement for the purposes of this report and recommendation.

The grounds are as follows:

Ground One:   Ineffective assistance of trial counsel:

A.    Trial counsel stated in opening statements that the murder was committed by unknown intruders, but did not present any evidence to support this claim.

B.    Trial counsel failed to object to the following hearsay pursuant to *Crawford v. Washington*:
1.    Testimony regarding the victim's alleged infidelity;
2.    Testimony regarding Neal's uncharacteristic tardiness to work on the day of the murder; and
3.    Testimony from the babysitter regarding the young child's attempt to enter the home.

C.    Trial counsel failed to:
1.    Cross-examine witnesses regarding the crime scene in order to prove that the decapitation was postmortem;
2.    Introduce autopsy report; and
3.    Cross-examine witnesses regarding the absence of blood spew and the presence of bone fragments in the pool of blood.

D.    Trial counsel failed to object to jury instructions which did not include decapitation as the cause of death.

E.    Trial counsel failed to move for a change of venue.

F.    Trial counsel failed to call Neal to testify.

G.     Trial counsel did not lodge timely objections to adverse rulings from the trial court.

H.     Trial counsel failed to request instructions on the lesser included offenses of manslaughter and mutilation or an instruction on accident.

I.     Trial counsel failed to advise Neal of his right to testify and, if necessary, insist that he testify.

J.     Trial counsel failed to present the defense that the murder was committed by unnamed intruders or bring to light the victim's alleged infidelity through Neal's testimony.

K.     Trial counsel failed to avoid cross-examination which implied that Neal was lying about the gunshots and the head.

L.     Trial counsel failed to protect Neal's rights to silence, counsel, freedom from unreasonable searches and seizures, and involuntary confessions by failing to move to suppress the confession.

M.    Trial counsel failed to:
1. Have the jury sequestered;
2. Have a sleeping juror brought to the trial court's attention;
3. Have the juror who unexpectedly left the jury box examined;
4. Have the jury questioned;
5. Obtain a corrective instruction from the court; and
6. Prevent the jurors from being open to prejudicial influences when allowed to move about the courthouse.

N.     Trial counsel failed to:
1. Object to the jury instruction on the elements thereby barring the issue from consideration on direct appeal; and
2. object to the indictment and its omission of the essential element of "killing" and to give adequate notice of the charges.

O.     Trial counsel failed to require that Juror Jones, who had poor eyesight, be substituted with an alternate.

P.     Trial counsel failed to strike Juror Dungan based on the juror's confusion over the definition of reasonable doubt.

Q.      Trial counsel failed to move for the examination of the juror who unexpectedly left the court room.

R.      Trial counsel failed to introduce the autopsy report.

S.      Trial counsel failed to object to M.B.I. Investigator Chancellor's opinion that the crime scene had been staged.

T.      Trial counsel failed to have Neal's mother testify that the front door to the home was accessible and usable.

U.      Trial counsel failed to require an accident instruction.

Ground Two:     Neal was denied equal protection due to racial and gender discrimination in the jury selection.

Ground Three:   Neal was denied his right to a trial by an impartial jury because:
A.      The jury was allowed to disperse and was exposed to improper influences;
B.      Juror Jones, who had poor eyesight was allowed to sit on the jury;
C.      Two African-American female jurors with the last name Suggs were both allowed to serve without a determination of whether they were related; and
D.      The jury had prior knowledge of the crime because of pretrial publicity.

Ground Four:    Neal was denied due process because:
A.      The indictment charged Petitioner with "decapitation murder" contrary to the autopsy report;
B.      The jury instruction on murder did not require the jury to find that decapitation was the cause of death and was unconstitutionally vague;
C.      the indictment did not contain the essential element of "killing";
D.      The jury instructions constructively amended the indictment by removing decapitation as the cause of death.

Ground Five:    Neal was denied his right to confrontation based on hearsay testimony (A) from the babysitter Mary Loerker and (B) regarding the victim's alleged infidelity.

Ground Six:     Neal was denied his right against self-incrimination and to counsel when his confession was obtained involuntarily.

| | |
|---|---|
| Ground Seven: | Neal was denied his right to testify. |

Ground Eight:       Neal was denied his right to a preliminary hearing which was waived by a public defender with a conflict of interest.

Ground Nine:       Trial court improperly instructed the jury by only requiring them to find Neal "guilty as charged," thereby indicating that it was unnecessary to find that decapitation was the cause of death.

Ground Ten:       The prosecutor committed misconduct when he failed to produce the autopsy report.

Ground Eleven:       Neal was denied due process because the indictment charged murder by decapitation but the jury was only instructed as to the general elements of murder.

Ground Twelve:       Neal was denied a fair trial based on defective voir dire of the jury.

Ground Thirteen:       Neal was denied a fair trial because the trial judge and the jury pool had all been exposed to pre-trial publicity.

Ground Fourteen:       Neal was denied fair trial by an impartial jury because the juror who unexpectedly left the box was not examined.

Ground Fifteen:       Neal was denied his right to confrontation based on hearsay testimony (A) from the babysitter Mary Loerker, and (B.) regarding the victim's alleged infidelity.

Ground Sixteen:       Neal was not validly convicted because the trial judge did not accept the jury verdict and adjudicate Petitioner guilty.

Ground Seventeen:       Neal was denied a fair trial because the jury was not instructed as to the lesser included offenses of manslaughter, desecration of a human corpse, and accident.

Ground Eighteen:       Neal is actually innocent and, therefore, none of his claims should be procedurally barred.

## **UNEXHAUSTED CLAIMS**

The respondents claim that Neal has failed to exhaust four of his claims: Ground Five (B), Ground Seven, Ground Fifteen(B) and Ground Eighteen. Neal has not responded to this

claim. With Grounds Five (B) and Fifteen (B), Neal claims that he was denied his right to confrontation based on hearsay testimony regarding the victim's alleged infidelity.[7] Ground Seven alleges he was denied his right to testify.[8] In Ground Eighteen, Neal claims that he is actually innocent and, therefore, none of his claims should be procedurally barred. Neal filed for post-conviction relief before the Mississippi Supreme Court, but failed to raise any of these four issues. He has procedurally defaulted on these claims in state court, and there is no remaining procedure available in state court by which he could now exhaust these claims.

Because Neal has failed to present these four grounds to Mississippi's highest court and has procedurally defaulted on these grounds, this court can consider these claims on the merits only on a showing either of "cause and prejudice" or a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722 (1991). A fundamental miscarriage of justice is shown by proof of actual innocence. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). The petitioner must be able to *prove* that he did not commit the crime. *Id.* To do so he must offer new and reliable evidence, not presented at trial, that is so convincing that "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo,* 513 U.S. 298, 327 (1995). While Neal's Ground Eighteen is a claim that he is actually innocent and is clearly an attempt to sidestep his procedural default, a review of the proof presented at trial shows overwhelming proof to the contrary and Neal's petition and the state court record are devoid of any new evidence not presented at trial.

---

[7] As discussed in the hearsay subsection of Ground One, this claim is also without merit.

[8] As discussed, infra, this claim also has no merit.

In order to show "cause" to excuse the procedural default Neal must show that some external impediment prevented him from exhausting these claims before the Mississippi Supreme Court. The petitioner makes no claim in his petition of any cause that would excuse his default. Because there is no legally sufficient excuse for Neal's default, the court need not consider any prejudice if the claims are not reviewed on the merits. However, a review of the record shows that Neal will not be prejudiced by a failure to consider these claims on the merits. While attorney error amounting to ineffective assistance of counsel can excuse these defaults, *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986), an independent claim of ineffective assistance of counsel for failing to raise the issues at the trial and/or appellate level must be raised and exhausted before the state courts. Neal did not raise an ineffective assistance of counsel claim for failure to raise these issues before the state court. Therefore, neither cause for the default, nor resulting prejudice have been shown, and the court cannot reach the merits of these claims.

## PROCEDURAL DEFAULT

The state asserts that many of Neal's claims are procedurally barred. The respondents argue that one group of grounds is barred under the contemporaneous objection rule and a second set of grounds is barred under § 99-39-21(1) of the Mississippi Code. This statute requires a defendant to raise every objection or defense at the earliest time it can be decided, whether at trial or on direct appeal, or have the defense or objection deemed waived.[9] Neal has

---

[9] That statute reads as follows: "Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial, and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver." Miss. Code Ann. 99-39-21 (1).

not filed a rebuttal to the respondents' assertions that he has procedurally defaulted on these grounds.

When a state court refuses to consider a claim because the petitioner has failed to comply with a state procedural rule, the federal courts may not consider the claim on habeas, provided that the state courts routinely enforce the rule. *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001), *Moawad v. Anderson,* 143 F.3d 942, 947 (5th Cir. 1998). Both of these Mississippi procedural requirements have been held to be independent and adequate grounds to bar federal review. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997); *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992). Therefore in the absence of constitutionally ineffective assistance of counsel, these claims are procedurally barred.

A. Failure to Object Contemporaneously

The respondents argue that Grounds Three (B) and (C),[10] Four (A), (B) and (D),[11] and all of Grounds Eleven,[12] Twelve,[13] Thirteen[14] and Seventeen[15] were found to be procedurally barred by the Mississippi Supreme Court because of the absence of a contemporaneous objection.

---

[10] He was denied a fair trial because a juror named Jones had poor eyesight was left on the jury and two African-American jurors with the same last name were allowed to sit on the jury without a determination of whether they were related to one another.

[11] He was denied due process because the indictment charged him with committing the murder by decapitation, contrary to the autopsy report and failed to include the essential element of "killing." The jury instructions constructively amended the indictment by removing decapitation as the manner of death.

[12] He was denied a fair trial because the jury was only instructed on the general elements of murder, but the indictment charged decapitation as the method for the killing.

[13] He was deprived of a fair trial because of a defective voir dire of the jury panel.

[14] He was denied a fair trial because both the judge and the jury had been exposed pretrial publicity.

[15] He was denied a fair trial because the jury was not instructed on lesser included offenses including manslaughter, desecration of corpse and, accident.

Because of the failure to object contemporaneously at trial, unless Neal can successfully press an ineffective assistance of counsel claim to overcome this procedural bar this court cannot grant relief on any of these grounds.

B. Statutory Waiver

The respondents claim another group of grounds Neal seeks to raise were found to be procedurally barred in the state court pursuant to § 99-39-21(1) on his petition for post-conviction collateral review. The respondents assert that Grounds Two,[16] Three (A)[17], Four (C),[18] Six,[19] Eight,[20] Nine[21] and Ten[22] were found to be procedurally barred on post-conviction relief under this provision of the Mississippi Code. Unlike some of the grounds listed as procedurally barred under the contemporaneous objection rule – where Neal has argued ineffective assistance of counsel – Neal has not raised any allegation of ineffective assistance of appellate counsel as to these grounds. He, therefore, has not attempted to show cause for the default and none of these claims can be considered further.

---

[16] Neal was denied equal protection because of racial and gender discrimination in the jury selection.

[17] Neal was denied his right to a trial by an impartial jury because the jury was allowed to disperse and was exposed to improper influences..

[18] Neal was denied due process because the indictment did not contain the essential element of "killing."

[19] Neal was denied his right against self-incrimination and to counsel when his confession was obtained involuntarily.

[20] Neal was denied his right to a preliminary hearing which was waived by a public defender with a conflict of interest.

[21] Trial court improperly instructed the jury by only requiring them to find Neal 'guilty as charged," thereby indicating that it was unnecessary to find that decapitation was the cause of death.

[22] The prosecutor committed misconduct when he failed to produce the autopsy report.

<u>GROUND ONE</u>

<u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Neal lists twenty-one ways in which he claims his attorney failed him. To establish ineffective assistance of counsel, the petitioner must show both (1) that his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997).

The deficiency determination, which has been made by the state court, is not unguided. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. The court is not to analyze counsel's actions in hindsight, but rather to judge his decisions in a highly deferential manner. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689). If counsel's performance is deemed to have been deficient, then the court must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different, *Sharp v. Johnson*, 107 F.3d 282, 286, n.9 (5th Cir. 1997), or that counsel's conduct rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995). A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. *Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998).

In order to meet the prejudice prong of *Strickland*, a petitioner may not simply allege, but must actually prove prejudice. *Bonvillain v. Blackburn*, 78 F.2d 1248, 1253 (5th Cir. 1986).

At the federal habeas level, because of the standard of review of state court post-conviction rulings, a review of claims of ineffective assistance of counsel is subject to a "doubly deferential" standard of review. *Cullen v. Pinholster,* 563 U.S ___, ___ , 131 S.Ct 1388, 1403, (2011). This standard requires the federal courts to give the benefit of any doubt, not only to the defense attorney, but to the state court decision. *Burt v. Titlow*, ___U.S. ___, 134 S.Ct. 10, 13, (Oct 8, 2013). Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, the statute governing federal habeas proceedings erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. *Id.* at 15-16. Before this court may act, the prisoner must show "an error... beyond any possibility for fair-minded disagreement." *Herrington v. Richter*, 560 U.S.___, ___, 131 S.Ct. 770, 786-87 (2011). Federal courts will only intervene and grant relief where there has been some extreme malfunction within the state court criminal justice system. *Id*. at ___, 131 S.Ct. at 786. The standard is very high and is intended to be so. *Id.* at ___,131 S.Ct. at 786.

## THE ABSENCE OF PREJUDICE

Put simply, the state court record contains overwhelming evidence of Neal's guilt. Neal cannot prove prejudice on any of his numerous claims of ineffective assistance of counsel on the record before the court. Not only did Neal give three inconsistent versions of events, one of which is a confession to premeditated murder, his confession was corroborated by other evidence. His outer clothes had no blood on them but his underwear had spots of blood. He claimed to be in his underwear when he killed Cleveland. There were no signs at the scene nor indication on the body that there was any type of struggle. He confessed that he shot Cleveland while she was sleeping. There was a substantial amount of blood on the bed and a trail of blood

between the bedroom and bathroom, consistent with his statement that he dragged the body to the bathroom. He claimed he used bleach on the body. An empty bleach bottle was found in the bathroom. He also told law enforcement that he believed Cleveland had been unfaithful and that he doubted his paternity of her youngest child, adding the motive for the murder.

In order to succeed on claims of ineffective assistance of counsel, his claims would either need to result in large swaths of the proof in the record being deemed inadmissible or alternatively succeed on a claim where prejudice is presumed. Because of the strength of the proof of Neal's guilt, some of his claims of ineffective assistance of counsel are discussed only briefly.

<u>THE INTRUDER DEFENSE</u>

Neal's defense at trial, as set out by his attorney in the opening statement, was that three unknown intruders entered the home and then shot, killed, and decapited Cleveland. Several of the claims of ineffective assistance relate to alleged failures to present this defense convincingly. Neal is the only potential witness who could testify about the presence of intruders in the home.

Neal asserts ineffectiveness because:

1) Trial counsel stated in his opening statement that the murder was committed by unknown intruders, but did not present any evidence to support this claim. (Ground 1(A));

2) Trial counsel failed to call Neal to testify. (Ground 1(F));

3) Trial counsel failed to advise Neal of his right to testify and, if necessary to insist that he testify. (Ground 1(I));

4) Trial counsel failed to present the defense that the murder was committed by unnamed intruders or bring to light the victim's alleged infidelity through Neal's testimony. (Ground 1(J);

5) Trial counsel failed to have Neal's mother testify that the front door to the home was accessible and usable. Ground 1(T)).

Three of the above grounds focus on what Neal claims his attorney did and/or should have done about calling Neal as a witness on his behalf. He argues first that his attorney should have but did not recommend that he testify. He claims his lawyer should have insisted that Neal testify. Even without benefit of a doubly deferential standard for review, it is easy to find that the judgment or advice of his counsel, whatever it may have been, cannot be deemed professionally unreasonable. Neal's only defense was to try to disprove or cast doubt on his confession by presenting the intruder defense. This fact would suggest that Neal perhaps should testify, but with Neal's contradictory statements and his confession, a devastating cross-examination was assured, if he took the stand. The conventional wisdom of the defense bar would strongly favor advising Neal not to testify in those circumstances. Assuming that his attorney advised him not to testify, as Neal claims, that advice is clearly within the range of professionally reasonable representation.

In both Grounds 1(I) and (J), Neal makes claims not included in the state court record. He alleges that the victim had a relationship with another individual, and that this man died in a fire very shortly after Cleveland's death. He says his attorney should have called him to testify about these circumstances. While the court could not consider evidence outside of the record, none is presented. Everything set forth in these grounds is rank speculation. There is no proof that these individuals knew one another. There is no proof in the record that there was a second death; that it was suspicious; or that there is any connection between Cleveland's death and the alleged death of this other individual in a house fire.

Finally, Neal's counsel cannot insist that he testify. Neal has a Fifth Amendment right to testify or to refrain from testifying. The trial court advised Neal of this right during jury selection, including his right to override his attorney's opinion. S.C.R. vol 3, p. 41. Neal said he understood. *Id.* The judge talked to Neal about his right to testify or remain silent after the close of the state's case. S.C.R. vol. 4, p. 219-21. He asked Neal whether he wished to testify or not. Neal was allowed to consult with his attorney. S.C.R. vol. 4, p. 220. Neal informed the judge, "I'm not going to testify." S.C.R. vol 4, p. 221. His attorney then spoke to the court, indicating that he and Neal had also had an earlier discussion about whether or not Neal should testify. *Id.* Counsel said that Neal "reiterated his decision not to testify and he feels that's in his best interest. Am I right?" *Id.* Neal responded, "Yes, sir." *Id.*

In Ground 1(A), Neal complains that his attorney mentioned the intruder defense during opening argument and never mentioned it again. He told the jury Neal's exculpatory version during his opening. Given that there was no other defense available, he had little choice but to present this story and garner as much evidence as possible to support the defense. He established in cross-examination of law enforcement officers that the victim's head had not been located, suggesting that Neal could not lead them to her head because he had not in fact disposed of it. This cross-examination also highlighted the fact that surveillance video did not show Neal to be at the lake where he said he had disposed of her head. S.C.R. Vol 4, p. 141-44. In his closing argument, defense counsel alluded to this alternate theory of what happened to Cleveland. S.C.R. vol. 4, p. 242-247. With Neal choosing not to testify, the court does not understand what more counsel could have done.

Nor can Neal's counsel be faulted for not calling Neal's mother's to testify about the accessibility of the front door. Ground 1(T). Such testimony would have been largely cumulative and from a clearly interested witness. Furthermore, the state's witnesses testified, not that the door could not be accessed, but rather that it appeared it was not used routinely. Officer Davis testified that the area around the front door appeared to be grown up. S.C.R. vol. 4, p. 159. Steve Chancellor testified the front door had been stiff and a bit difficult to open. S.C.R. vol. 4, p. 202-03. Additionally, a videotape of the scene, including the exterior of the home, was shown to the jury. S.C.R. vol. 4, p. 202-03. Decisions about which witnesses will be called are clearly strategic choices and typically cannot be the basis for a claim of ineffective assistance of counsel.

There is no merit to any of the grounds touching on the intruder defense and Neal's decision to forgo testifying on his own behalf.

HEARSAY TESTIMONY

Neal faults his attorney for failing to object to testimony presented during his trial asserting violation of his right to confrontation of the witnesses against him, citing *Crawford v. Washington*, 541 U.S. 36 (2004). In Ground 1(B) Neal argues his attorney should have objected to the following testimony: 1) references to the the victim's alleged infidelity; 2) that Neal was uncharacteristically late for work on the day of the murder; and 3) the testimony of a baby sitter that the victim's older child said he had attempted to enter the home and, uncharacteristically, been unable to get into the house.

The evidence of motive – the alleged infidelity of the victim – came into evidence through Neal's videotaped confession and the testimony of law enforcement officers about

earlier oral statements Neal made to them. This is not hearsay testimony, but the admissions of a party opponent. A statement is not hearsay if, "the statement is offered against a party and is ...the party's own statement, either in an individual or representative capacity...." Miss. R.Evid. 801 (d)(2)(A). The admission of this testimony, therefore, does not violate the right to confrontation. No legitimate hearsay objection could be made to this evidence.

A sheriff's deputy testified that he pulled Neal's time records for seven days and found that he was exactly on time during those days, but that he clocked into work ten minutes late on the day of the murder. S.C.R. Vol. 3, p. 112. The respondents argue this evidence is not testimonial under *Crawford* and alternatively that Neal cannot prove prejudice. Pretermitting the closer question of whether or not this testimony, which was about information developed during the course of a police investigation, is or is not testimonial, any error is clearly not prejudicial. Between the physical proof and the different statements given by Neal, deleting this testimony about his arrival times at work would not alter the outcome at trial.

A neighbor who babysat Cleveland's older child testified that the child told her on the afternoon of the murder that he had tried, but been unable to get into the house. He told her his window was locked and that was not normal. He could hear the baby crying, but no one answered the door. *Crawford* prohibits the use of testimonial hearsay in a trial based on a defendant's confrontation rights, unless the declarant was unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. The respondents argue this is not testimonial hearsay, but non-testimonial hearsay, where the states are allowed flexibility to develop their own rules of evidence, without implicating the Confrontation Clause. The *Crawford* Court, while not attempting to offer a comprehensive

definition, found that "testimonial hearsay" applied "at a minimum to prior testimony at a preliminary hearing, before the grand jury, or at a formal trial; and to police interrogations. These are the modern practices with the closest kinship to the abuses at which the Confrontation Clause was directed." The Mississippi Supreme Court specifically considered this testimony and determined it was not testimonial hearsay. The court considered that at the time the statement was made, neither the boy nor the babysitter had any knowledge of a crime, and the statement was clearly not made for the purpose of incriminating anyone. The court cited the appropriate case law. Its interpretation and application of *Crawford* to the facts of the case are not unreasonable. With a final determination that the testimony was admissible, Neal's attorney was not deficient when he failed to object to the testimony.

## THE DECAPITATION ISSUE

Many of Neal's complaints about his trial counsel center around his "decapitation" defense.[23] Though Neal confessed both to killing Cleveland by decapitating her, and alternatively, to shooting her in the head and then decapitating her, the indictment referred to decapitation as the means of killing. The indictment reads, in pertinent part: "[T]hat Jermaine

---

[23]    C.  Trial counsel failed to:
        1. Cross-examine witnesses regarding the crime scene in order to prove that the decapitation was post-mortem.
        2.  Introduce the autopsy report.
        3.  Cross- examine witnesses regarding the absence of blood spew and the presence of bone fragments in the pool of blood.
     D.  Trial counsel failed to object to jury instructions which did not include decapitation  as the cause of death.
     N.  Trial counsel failed to:
        1.Object to the jury instruction on the elements thereby barring the issue from consideration on direct appeal; and
        2. Object to the indictment based on the omission of the essential element of "killing" and to give adequate notice of the charges.
     R.  Trial counsel failed to introduce the autopsy report.

Neal,... on or about the twenty-second day of August,... 2006,... did willfully, unlawfully and feloniously decapitate Lakeshia Cleveland, a human being; Jermaine Neal acted with the deliberate design to effect the death of Lakeshia Cleveland, in direct violation of Section 97-3-19 (a), Mississippi Code 1972...." S.C.R. vol. 1, p. 4.

Looking at Neal's arguments before this court and the Mississippi Supreme Court, it is clear he believes that based on the language of the indictment, the state had to prove he killed her when he decapitated her. Given this belief, Neal launches a multi-pronged attack on his attorney based on this rather clumsily drafted indictment. He asserts that his attorney:

1. Should have challenged the indictment as inadequate; (Ground 1(N)(2))

2. Should have objected to the state's instruction because it did not require the jury find decapitation as the cause of death, in order to convict Neal; (Ground 1(D), Ground 1(N)(1); and

3. That his attorney should have presented additional evidence to establish that Cleveland was dead before she was decapitated. (Grounds 1(C)(1-3), Ground 1(R)

The Mississippi Supreme Court did find these issues were waived by the failure to object, but also provided a detailed alternative finding that Neal's claims about the indictment and jury instructions were without merit. Indictments function to "furnish the accused such a description of the charges against him as will enable him to adequately prepare his defense." *Neal v. State*, 15 So.3d at 397 (quoting *Williams v. State*, 445 So.2d 798 (Miss. 1984). The failure to include aggravating circumstances in a capital murder indictment was not inadequate notice of the charges. "[A]ll that is required in this regard is a concise and clear statement of the elements of the crime charged. Nothing more is required." *Id.* at 804. The court found that because the indictment alleged a deadly act done with the design to cause her death it adequately alleged that

Neal killed Cleveland. The indictment also cited the murder statute. While the specially

concurring opinion offered a different rationale, that justice also found the indictment provided

adequate notice to Neal.

The Mississippi Supreme Court also rejected Neal's arguments concerning the jury

instructions on the merits. The court noted that the function of jury instructions, unlike an

indictment, is "to tell the jury what facts they have to find and who has the burden of proving or

disproving those facts." *Id.* at 397 (quoting *Harris v. State*, 861 So.2d 1003, 1016 (Miss. 2003)).

The court instructed Neal's jury that they could find him guilty only "if it found beyond a

reasonable doubt that Neal had killed Cleveland with the deliberate design to effect her death,

and not in necessary self-defense." *Id.* It was not required to find that decapitation was the

cause of death. The Mississippi court rejected Neal's claim on the merits that the jury

instructions had to conform to the indictment and cited *Duplantis v. State*, 708 So.2d 1003, 1016

(Miss. 2003).

In Neal's case, the indictment contained an allegation about the cause of death, but that is

not an element of the crime of deliberate design murder. Miss. Code Ann § 99-7-37 (Rev.

2007).[24] In *Duplantis*, his indictment for felony murder included an allegation that the murder

had been done with malice aforethought. "Malice aforethought" is not an element of felony

murder under Mississippi law. As with Neal, Duplantis' jury was allowed to convict him based

on jury instructions outlining the actual elements of felony murder and deleting any requirement

of finding "malice aforethought." Like Neal, Duplantis argued that the jury instructions had

---

[24] "[I]t shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, willfully, and of malice aforethought, kill and murder the deceased." Miss. Code Ann. § 99-7-37 (Rev. 2007).

constructively and improperly amended the indictment. The court in *Duplantis* found it was sufficient that the jury instructions follow the requisite elements of the crime, even though the instructions did not track the language of the indictment. Likewise, because the manner of death was not an essential element of deliberate design murder, the court found no error in the instruction that did not reference the cause of death.

Having ruled against Neal on the merits on the adequacy of the indictment and the accuracy of the jury instructions, it is simply not possible to find inadequate and prejudicial representation by his attorney on Grounds 1(D) and 1(N)(1) and (2).

Finally, given that the Mississippi Supreme Court approved the jury instructions omitting decapitation as an element, it is clear that Neal's attorney did not provide inadequate assistance of counsel when he did not introduce additional evidence to show that the decapitation was post-mortem. Consequently, there was no error for failing to introduce the autopsy report by Dr. Stephen Hayne, with its reference to the decapitation as "post-mortem." (Grounds 1(C)(2) and 1(R)). [25]

Thus, for the foregoing reasons, Grounds 1(C), (N) and (R) fail to establish any ineffective assistance of counsel or prejudice.

## CHANGE OF VENUE

In Ground 1(E) Neal alleges his attorney was obliged to move for a change of venue. The Mississippi Supreme Court determined that Neal had not demonstrated deficient

---

[25]  Neal alleged that his attorney should have cross-examined the state's witnesses about the crime scene, including blood spray and bone fragments in the pool of blood in order to establish that the decapitation was not the cause of death. As the respondents suggest, this line of questioning is so gruesome, competent counsel would be extremely hesitant about pursuing it, but especially where it is unclear how such questioning would have yielded proof that the decapitation was not the cause of death.

representation or prejudice on this claim. Under Mississippi law there is no duty to request a change of venue and such a decision therefore "falls in to the realm of trial strategy." *Neal*, 15 So.3d at 406 (citing *Brawner v. State*, 947 So.2d 254, 262 (Miss. 2006)). The trial judge questioned the jurors about their exposure to pretrial publicity and any potential prejudice. He excused several jurors who indicated that they could not be fair. S.C.R. vol. 3, p. 18. All other potential jurors were questioned and indicated that they could be fair, in spite of the publicity. The decision of the Mississippi Supreme Court denying this claim cannot be disturbed as it does not represent an unreasonable application of federal law.

OBJECTIONS TO UNFAVORABLE RULINGS

With Ground 1(G) Neal faults his attorney for failing to make timely objections to adverse rulings by the trial court. Neal has not indicated what objections should have been made. Because "mere conclusory allegations do not raise a constitutional issue," Neal has not stated a claim for relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)

JURY INSTRUCTIONS

In Grounds 1(H) and 1(U), Neal claims his attorney should have sought jury instructions allowing the jury to consider the "lesser included" offenses of heat-of-passion manslaughter, desecration of a human corpse, and accident. The Mississippi Supreme Court, though finding the grounds procedurally barred, made an alternate finding that the claims were without merit.

There was no evidence to support granting a heat-of-passion manslaughter instruction. Neal gave statements to law enforcement denying that the couple had been arguing the day of the murder. Neal also told the officers he suspected that Cleveland was unfaithful and that the younger child might not be his child. Among other things, Neal said he found paperwork about

DNA testing related to the child prior to the day of the killing, but had not confronted Cleveland with his discovery. S.C.R. vol 2, p. 249. Additionally, Neal wrote his own note, included in Officer Davis' notes, that he shot Cleveland in the head while she was sleeping. Under these circumstances, Neal's attorney cannot be faulted for not seeking a manslaughter instruction.

Nor could Neal's counsel have obtained a jury instruction on desecration of the corpse as a lesser included offense. The Mississippi Supreme Court held that desecration of a corpse is a different offense, not a lesser included offense to murder. Murder requires a living human being who is killed by the accused, while desecration involves acts against human remains. Miss. Code Ann. § 97-2-25 (2)(a). While Neal, crediting his statement that he killed Cleveland with two shots to her head, was also guilty of desecrating her corpse, he was not indicted for this offense. Because desecration of the corpse is not a lesser included offense, but an additional offense, his attorney was not derelict in omitting an instruction on desecration in his submissions to the court.

The only evidence to support a jury instruction on accident was Neal's statement in the videotaped confession that the gun accidently fired. Of course, that does not explain the second shot to the head to which Neal confessed.[26] Considering the defense strategy of trying to create reasonable doubt about whether Neal had anything to do with the death or decapitation, deciding

---

[26] The transcript of the video confession includes the following sequence of questions and answers. (Punctuation added).

Q.      You had a gun?
A.      Yea.
Q.      She was asleep?
A.      Yea. She was asleep, and ah, I had it sorta like pointed at her. Didn't really have the heart to just do it. So put back up and I went to put it back up and had my hand on the thing. It pow before I know it. (inaudible) first time. Just did it again. Just happened up.
Q.      You shot her again?
A.      Yea. You know. S.C.R. vol. 2, p. 243.

whether to ask for an accident instruction was a matter of trial strategy, not ineffective assistance of counsel.  Furthermore, any error in not obtaining such an instruction was clearly harmless.

## THE LIAR CROSS-EXAMINATION

Neal complains his attorney should have avoided a cross-examination that painted him as lying about "both the gunshots and the head."  Neal does not further explain what he means in Ground 1(K).[27]  These conclusory allegations fail to raise a constitutional issue.  Because the petitioner is represented by counsel, he is not entitled to the benefit of liberal construction.  *Haines v. Kerner,* 404 U.S. 519 (1972).  The respondents have, nonetheless, responded to that argument.  There is a cross-examination of Officer Davis that covers this subject matter.  SCR vol. 4, p. 178-79.  During the cross-examination, counsel brought out that videotapes showed Neal had not been at the lake.  The officers admitted that they were assuming the manner of the victim's death based on Neal's statements, but as the attorney pointed out, had done no testing for gun shot residue on Neal's hands.  The attorney brought out in the cross-examinations that neither the victim's head nor the weapons had been found where Neal said he left them.

The strategic motivation for this cross-examination is obvious.  Counsel was attempting to establish some of the elements of the intruder defense.  Because defending Neal necessarily involved trying at least to create doubt about his confession to murder, this was a strategic

---

[27]  The ground is set forth verbatim here.  " Failed to avoid Cross Examination that Projected Neal lying about both Gunshots and Head.  It was absolutely strange, only explained by the intruder (T 71-74) defense which was not advanced except in Defense's counsels' Opening, that Defense counsel would reveal through his questioning that Neal may have lied both about the two bullets to Lakeshia's head and the decapitation without including that someone, the intruders (T 71-74) committed the heinous crime.  It cannot be a strategic choice that Defense counsel would question the gunshots, when he knew that the Medical Examiner Steven Hayne had rendered a report of "post-mortem decapitation."

decision by counsel.  Neal has not shown that this amounts to deficient performance, nor did the Mississippi Supreme Court unreasonably apply federal law when it rejected this claim.

<u>SUPPRESSION OF CONFESSION AND EVIDENCE</u>

Neal next faults his attorney for failing to move to suppress his confession. (Ground 1(L))  The record established that Neal was Mirandized at the scene of the crime and signed a waiver of his rights.  SCR vol 3, p. 103, Exhibit S-13. S.C.R.. vol 3, p. 103.  After he arrived at the station, Neal was given his Miranda warnings again and signed a second waiver.  Exhibit S-17, S.C.R. vol. 3, p.118, vol.4, p. 163.  After the second Miranda warnings, Neal signed and corrected Officer Davis' handwritten notes that he took during the search at the lake for the victim's head.  Exhibit S-21, S.C.R.vol. 4, p. 171.  Neal had added his own note to this document about shooting the victim.  Finally he was given the Miranda warnings a third time and signed a third waiver of his rights before giving his videotaped confession.  Exhibit S-18, S.C.R. vol. 3, p. 129.

He now claims in his petition that there were implied – if not actual – threats and that his "early request" for an attorney was denied.  Neal's unsupported assertions, which are contrary to all the evidence in the record, do not provide an evidentiary basis before this court for finding attorney error when he chose not to move to suppress the confession.  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition ... unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."[28]).

---

[28]  While this is not a *pro se* petition, it does not change the fact that his assertions are not supported by evidence and therefore lack probative value.

Neal's claims regarding searches and seizures are too vague to state a claim for a Fourth Amendment violation. He does not specify which evidence he believes was improperly seized, nor how any seizure was impermissible. The initial searches and any seizures at the scene were done with Neal's consent. His unblemished top clothes and his blood-spattered underclothes were obtained with Neal's consent.

The undersigned recommends that Ground 1(L) be denied.

<u>THE JURY</u>

Neal makes numerous accusations against his former attorney about the handling of the jury at various points during the trial.

In Ground 1(M) and Ground 1(Q), Neal makes multiple arguments concerning his attorney's alleged failures in connection with the jury. Here the court abandons the respondents' recapitulation, in favor of the petitioner's language. This ground is set out below:

> (m) Failure to Have Jury Sequestered and Kept Together at all Times; failure to have the juror who was asleep brought to the court's attention; failure to have the juror who left the box mid-trial examined as to improper influence and, if he saw the jurors mingling with the family, failure to have them questioned and corrective instructions given by the Court. Failure to insist on sequestration when these event transpired.

Neal argues that a juror was asleep at some point in his trial, and his attorney failed to bring this to the attention of the court. There is nothing in the record to indicate that such an incident occurred. Neal's uncorroborated assertion that it did is not sufficient. *Id.*

The record shows that a female juror abruptly left the jury box during the trial. The trial court immediately dispatched a bailiff to locate the juror. After a brief recess, the trial resumed without any explanation in the record about the departure. The Mississippi Supreme Court rejected Neal's claim of error because the jury was repeatedly instructed not to talk to anyone

about the case. The law presumes in the absence of evidence to the contrary – and there is none in this case – that jurors follow the directions of the court. *Neal*, 15 So.3d at 402. There is nothing in the record to indicate that Neal's counsel should have taken any further action, or that his failure to do so resulted in any prejudice to Neal.

Neal also argues that if his attorney saw jurors mingling with the family, he should have taken corrective action. He also argues the jury should have been kept together to avoid exposure to improper influences. Neal, however, cannot point to any evidence in the record of any improper mingling or that the jury was subjected to improper influences. Nothing in the record suggests that his counsel witnessed improper conduct but failed to respond.

Neal also argues that the jury should have been initially sequestered at the beginning of the trial, or at the least after "these events" transpired. Neal makes no showing of circumstances that would necessitate sequestration, nor has he made any showing of any improper influence on the jury because they were not sequestered. Consequently, the court should deny Ground 1(M) in its entirety.

In Ground 1(O), Neal claims his attorney should have sought to remove Juror Jones, who mentioned at the beginning of the trial that he had bad eyesight. S.C.R. vol 3, p. 58. After Neal's counsel pointed out that jury instructions would be read to the jury, the trial judge decided to let Jones attempt to serve on the jury. The judge said he would check with the juror to make sure he had been able to see the evidence and would replace him with an alternate, if necessary. S.C.R. vol 3, p. 58-60. He checked with the juror twice and was assured twice that his vision was not preventing Jones from seeing the evidence. S.C.R. vol 4, p. 60, 230. Neal argues the juror was unable to see the evidence and, therefore, unable to be an effective juror. But this is

simply Neal's speculation. There is no proof that the juror misrepresented his ability to see or that Neal was prejudiced.

In Ground 1(P), Neal argues that Juror Dungan should not have been allowed to remain on the jury based on his confusion concerning the reasonable doubt standard. In voir dire, Dungan initially said that he would require the prosecution to prove its case beyond all doubt. S.C.R. vol. 3, p. 25. Both the prosecutor and defense counsel made some comments about reasonable doubt, though neither offered a definition. S.C.R. vol. 3, p. 24-26, 39. The Mississippi Supreme Court found this claim lacked merit. It was a reasonable trial strategy for Neal's counsel to try to rehabilitate the juror to keep him on the panel given his "beyond all doubt" assertion. This ground is without merit.

## THE EXPERT

Steve Chancellor, an investigator with the Mississippi Bureau of Investigations, testified at Neal's trial about his education and experience in crime scene investigation. He described the scene in detail and showed the jury video of the crime scene. He opined that the crime scene had been staged in an attempt to misdirect attention from Neal. Neal contends that his attorney should have prevented this opinion from being presented to the jury. (Ground 1(S)). Neal's statement of the grounds fails to show how this was error or how his attorney could have prevented its admission. Instead Neal sets out his conclusory declaration about how his testimony, had he testified, would have rebutted Chancellor's opinions.[29]

---

[29] Neal's claim states: "(s) Failure to object to MBI Investigator Chancellor giving an opinion that the crime scene was 'staged.'
This probably was also an attempt to avoid the intruder defense. Neal had he testified would have explained the writing n the bathroom wall and otherwise the entire scene would have been explained by his direct testimony of the actions of the Intruders."

Chancellor testified to his education and his long experience in crime scene investigation beginning in 1979. He has also been an instructor in crime scene analysis and forensic science at both the University of Mississippi and the Mississippi State Police Academy. S.C.R. vol. 4, p.183. A general challenge to his qualification as an expert would clearly be unavailing. Chancellor testified that there was no sign of forced entry and no sign of a struggle. These facts would cast primary suspicion on the domestic partner – Neal. The writing on the wall, he opined, was directed at the victim, and because she had children with more than one man, was an attempt to cast suspicion toward them and "focus attention on somebody other than who would be the main suspect." S.C.R. vol 4, p. 206-207. Chancellor set forth the facts upon which he based his opinion and explained the significance of those facts in the formation of his opinion. His opinion is further bolstered by a portion of Davis' notes, signed by Neal, where Neal admitted staging the crime scene by undressing the body to make it look "like her other friend guy was there." S.C.R. vol. 1, p. 141. Therefore, it appears that objection to this testimony would have been fruitless.

OTHER GROUNDS-MERITS DETERMINATIONS

Though Neal has listed another seventeen grounds for relief, as the petitioners have set forth, these claims are largely barred from consideration because of a failure to exhaust or other procedural defaults. Having failed in each claim of ineffective assistance of counsel, no ground subject to a procedural failure can be considered.

The remaining grounds to be considered are Grounds Five (A) and Fifteen (A), Ground Fourteen, and Ground Sixteen. Each of these claims was considered on the merits by the Mississippi Supreme Court and rejected.

Grounds Five (A) and Fifteen (A) raise the same point. Neal asserts that he was denied his right to confront the witnesses against him when the babysitter was allowed to testify about Cleveland's nine year old son's attempt to enter the house on the afternoon of her murder. As previously discussed in the preceding section on hearsay testimony in Ground One, the Mississippi Supreme Court found that this was not testimonial hearsay within the meaning of *Crawford.* Under the AEDPA standard of review, this determination cannot be disturbed in a federal habeas action.

Ground Fourteen revisits the brief, unexpected departure of one juror from the jury box during the trial. As noted in the related ineffective assistance of counsel claim, there is simply no evidence to suggest that the juror's time out of the courtroom involved any misconduct by the juror or others, nor is there any indication that Neal suffered any prejudice at trial from this brief incident. Neal's argument to the contrary rests on pure speculation.

In Ground Sixteen, Neal asserts that the trial judge did not formally accept the jury's verdict and that he has, therefore, not been properly convicted of murder. Neal bases this argument on Miss. Code Ann. §99-19-3, which requires a jury verdict to be "accepted and recorded in court." This ground raises only an issue of state law. The interpretation of state law is exclusively the domain of the state courts. Because it states no claim for violation of any federal constitutional right, this claim is not cognizable in this habeas action. *Brownstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. 1981). Even if this court were convinced that the state court committed error, it could not act because a "mere error of state law" does not constitute a denial of due process. *Engle v. Isaac,* 456 U.S. 107, 121, n.21 (1982).[30]

---

[30] Neal has made a hyper-technical argument that the verdict was not accepted because the judge did not intone the words "I accept the verdict." The verdict was delivered in open court, published, and the jury polled to

## GROUND FOUR-ALTERNATE FINDING ON THE INDICTMENT

The last ground addressed here is whether Neal was denied due process based on the wording of the indictment.  The respondents have shown that every part of this ground is procedurally barred.  While agreeing that the procedural bar prevents relief, the undersigned offers an additional, alternative determination on this due process challenge.

"There is no federal constitutional right to an indictment before trial in a state criminal action."  *Hamilton v. McCotter*, 772 F.2d 171, 184 (5th Cir. 1985) (citing *Hurtado v. California,* 110 U.S. 516 (1884)).  Further, in the Fifth Circuit, "the sufficiency of a state indictment is not ordinarily a matter for federal habeas relief unless the indictment is shown to be so fundamentally defective as to have deprived the convicting court of jurisdiction to try the cause." *Id*. at 184 (citing *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984)).  This determination "can be made only by looking to the law of the state where the indictment was issued."  *Id*. (quoting *Johnson v. Estelle,* 704 F.2d 232, 236 (5th Cir. 1983)).  However, the Fifth Circuit has also explained that if "the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case," federal review may not proceed.  *Alexander v. McCotter*, 775 F.2d 595, 598-99 (5th Cir. 1985) (quoting *Liner v. Phelps*, 731 F.2d at 1203)).  Because the adequacy of the indictment has been squarely presented to the highest court in the state, and that court rejected the challenge, further federal review is unwarranted.

---

assure the verdict was unanimous.  The judge then noted that the jury found Neal guilty of murder, and immediately proceeded to sentence him to incarceration for the rest of his natural life.  Even as a matter of state law, this argument is clearly without merit.

Furthermore, in *Alexander v. McCotter* noted *supra*, the Fifth Circuit Court of Appeals held that, "[a]n indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against him and (2) enables him to plead an acquittal or conviction and bar a future prosecution for the same offense." *Alexander,* 775 F.2d at 599.

Whether the indictment stated the cause of death correctly, it is sufficient to allege that Neal killed Cleveland and that the killing was a deliberate design murder as defined by Mississippi law. Even if this challenge were not procedurally barred, it should be denied.

## CONCLUSION

Having considered all the grounds raised in the petition and finding that the grounds were either not exhausted, procedurally barred, or without merit, the undersigned recommends that the petition be denied with prejudice.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.1(a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within fourteen days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THIS the 14th day of February, 2014.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE

35